UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBATECH MIDWEST, INC.,

            Plaintiff,

v.

MARCEL LEUTHNER and
ROBATECH USA, INC.,

            Defendants.

Case No. 14-CV-1230-JPS

ORDER

On August 29, 2014, the plaintiff commenced this action in Racine County Circuit Court. (*See* Docket #1, Ex. 1). The defendants then removed the matter to federal court, after which it was assigned to this branch. (Docket #1). The defendants moved to dismiss the complaint (Docket #3, #7), but agreed to allow the plaintiff to amend its complaint but reserved their arguments in favor of dismissal (Docket #17, #21). The Court, therefore, denied the original motions to dismiss and allowed the plaintiff to amend its complaint. (Docket #23). The plaintiff amended its complaint, whereafter the defendants separately moved to dismiss the amended complaint. (Docket #24, #25, #27). The defendants' motions to dismiss are now fully briefed and ready for a decision. (Docket #26, #28, #29, #30, #32, #33).

1.     BACKGROUND

The Court begins by providing some background in this case. First, it describes the parties. Second, it describes the events leading up to this lawsuit. Third, it describes the defendants' motions to dismiss.

    1.1     Parties

The plaintiff, Robatech Midwest (hereinafter "the plaintiff"), is a Wisconsin-based distributor of glue application systems. (Docket #24, ¶¶ 1, 9).

The plaintiff is owned and controlled by Integrated Glueing Technology, Ltd., which operates from the United Kingdom. (*E.g.*, Docket #24, ¶ 11; Docket #30 at 2).[1] Integrated Glueing Technology distributes glue application systems in the United Kingdom. (Docket #30 at 2). Integrated Glueing Technology is not a party to the instant lawsuit.

Both the plaintiff and Integrated Glueing Technology distribute glue application systems manufactured by Robatech AG. (Docket #24, ¶ 9; Docket #30 at 2). Robatech AG is based in Switzerland and controlled by Marcel Meyer, a citizen of Switzerland. (Docket #24, ¶ 10). Neither Robatech AG nor Mr. Meyer are parties to the instant lawsuit.

Mr. Meyer also controls Robatech USA, Inc. ("Robatech USA"),[2] which *is* a defendant in this case. (*E.g.*, Docket #24, ¶¶ 3, 10). Robatech USA is incorporated in Georgia and appears to be the primary distributor of Robatech products in the United States. (*E.g.*, Docket #24, ¶¶ 3, 10, 13; Docket #30 at 2–3). It seems that Robatech USA is capable of both: (1) independently and directly distributing Robatech products to end users; and (2) distributing Robatech products to sub-distributors, such as the plaintiff, for resale pursuant to contractual relationships between Robatech USA and the sub-distributors. (*See* Docket #30 at 2–3). (This, it would seem, is how the plaintiff became the primary distributor of Robatech products in the Midwest.).

---

[1] The Court primarily draws this factual background from the allegations in the plaintiff's amended complaint and accepts those allegations as true for purposes of considering the motions to dismiss. Where necessary for clarification, the Court refers to factual representations made by the plaintiff in other documents; the Court does not necessarily accept those facts as true and none of the facts are of dispositive relevance.

[2] The plaintiff provides conflicting accounts of whether Mr. Meyer controls Robatech. (*Compare* Docket #24, ¶ 10, *with* Docket #30 at 2–3).

The remaining defendant is Marcel Leuthner. (Docket #24, ¶ 2). Mr. Leuthner is the President and CEO of Robatech USA. (Docket #24, ¶ 14). He is a citizen of Germany, but lives primarily in Georgia, where he operates Robatech USA. (*See* Docket #24, ¶ 2; Docket #1, Ex. 2, ¶¶ 1–4). The plaintiff appears to allege that Mr. Leuthner controls Robatech USA in theory but acts entirely at the direction of Mr. Meyer. (*See* Docket #24, ¶¶ 12–15; Docket #30 at 2–3).

1.2     Precipitating Events

This lawsuit is the by-product of an ongoing dispute between the parent companies in Europe. Robatech AG and Integrated Glueing Technology, through their owners, are currently engaged in contentious litigation in Switzerland (the "Swiss Litigation"). (Docket #24, ¶¶ 12, 13). In connection with the Swiss Litigation, Mr. Meyer threatened to use Robatech USA to cause the plaintiff to lose sales in the Midwest if Integrated Glueing Technology would not settle the Swiss Litigation. (Docket #24, ¶ 13).

Thereafter, Robatech USA, at the direction of Mr. Leuthner (whom, the plaintiff asserts, was acting at the direction of Mr. Meyer), began to limit the plaintiff's ability to sell products as a sub-distributor. Allegedly, Robatech USA did so in several ways.

First, it cabined the plaintiff's sales area. Previously the plaintiff had made sales outside of the Midwest; but, after Mr. Meyer's threat, Robatech USA notified the plaintiff that extraterritorial sales would no longer be allowed and that Robatech USA would strictly enforce territorial limits. (Docket #24, ¶¶ 24–25). Despite this warning, the plaintiff made an extraterritorial sale, which Robatech USA, through Mr. Leuthner, informed the plaintiff was a material breach of the distributorship agreement. (Docket

#24, ¶¶ 26–27). Thereafter, Robatech USA refused to approve any extraterritorial sales. (Docket #24, ¶¶ 29–32).

Second, Robatech USA facilitated sales by the plaintiff's competitors. The plaintiff alleges that Robatech USA, through Mr. Leuthner, has disclosed pricing and customer information to the plaintiff's competitors. (Docket #24, ¶¶ 35–38).

Third, Robatech USA has imposed a credit limit on the plaintiff. The plaintiff alleges that Robatech USA, in contravention of the distributorship agreement and prior practice, has imposed a strict credit limit on the plaintiff. (Docket #24, ¶¶ 41–45).

Fourth, Robatech USA has increased its prices. The plaintiff alleges that Robatech USA, in contravention of the distributorship agreement, increased prices more than once in 2014. (Docket #24, ¶¶ 47–50).

Fifth, Robatech USA has denied the plaintiff access to the annual seminars hosted by Robatech USA and/or Robatech AG, which results in lost business opportunities and diminished reputation in the industry. (Docket #24, ¶¶ 51–55).

1.3     Motions to Dismiss

In light of these activities, the plaintiff filed suit against Robatech USA and Mr. Leuthner. (*See* Docket #1, Ex. 1). In its amended complaint, the plaintiff asserts the following claims against the defendants:

(1) violation of the Wisconsin Fair Dealership Law, Wis. Stat. § 135.01, *et seq.* (Docket #24, ¶¶ 56–62);

(2) injury to business, Wis. Stat. § 134.01, *et seq.* (Docket #24, ¶¶ 63–71);

(3) breach of contract (Docket #24, ¶¶ 72–77);

(4) promissory estoppel (Docket #24, ¶¶ 78–86);

(5) declaratory judgment (Docket #24, ¶¶ 87–93); and

(6) breach of implied duty of good faith and fair dealing (Docket #24, ¶¶ 94–107).

The defendants have filed separate motions to dismiss. Mr. Leuthner, alone, asserts that he is not subject to personal jurisdiction in Wisconsin and that, therefore, the matter must be dismissed as against him. (*See, e.g.*, Docket #26). Meanwhile, Robatech USA (seemingly in conjunction with Mr. Leuthner) separately argues that the entire complaint must be dismissed pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure because the parties' contract deprives the Court of jurisdiction to hear this case and/or establishes that the action is mis-venued, as the parties' contract requires that the action be venued in the Superior Court of Cobb County, Georgia. (*See, e.g.*, Docket #27 at 4–7). In the alternative, they argue that the plaintiff's second, fourth, and sixth claims—injury to business, promissory estoppel, and breach of implied duty, respectively—must be dismissed pursuant to Rule 12(b)(6). (Docket #27 at 8–24).

2. ANALYSIS

The Court will first address the defendants' jurisdiction and venue arguments before turning to their specific claims-related arguments.

2.1 Jurisdiction- and Venue-Related Arguments

Of course, the jurisdiction and venue related arguments present the threshold issues. For instance, if the Court were to find that the parties' contract, in fact, called for exclusive jurisdiction in the Superior Court of Cobb County, Georgia, then the Court would be obliged to dismiss the case in its entirety, with no need to reach Mr. Leuthner's personal jurisdiction arguments or the arguments related to the specific claims. Likewise, even if the Court rejects the defendants' contract-based argument, it may still

dismiss all of the claims against Mr. Leuthner for lack of personal jurisdiction, in which case the Court would not need to consider whether the specific claims are appropriate as against Mr. Leuthner. Therefore, the Court will address those two questions, in that order, before turning to the defendants' Rule 12(b)(6) claims.

### 2.1.1 Defendants' Rule 12(b)(2) and Rule 12(b)(3) Arguments in Favor of Dismissal on the Basis of Terms in the Parties' Contract

The defendants' primary argument in favor of dismissal of this entire case stems from terms in the parties' contract. The parties' distributorship agreement includes the following clause:

> APPLICABLE LAW. The parties acknowledge and agree that this Agreement was negotiated, made and entered into by the parties in Georgia. The parties agree that the Laws of the State of Georgia have exclusive jurisdiction over any dispute that may arise under, or in connection with, the enforcement of interpretation of this Agreement. Distributor waives any objection based on inconvenience of venue and any objection to venue or forum for such claim or cause of action, and hereby submits to jurisdiction and venue in the Superior Court of Cobb County, Georgia.

(Docket #9, Ex. 1, ¶ 10).[3] The defendants argues that this clause clearly requires that the action be venued in the Superior Court of Cobb County, Georgia, thus requiring dismissal pursuant to Rule 12(b)(2) or Rule 12(b)(3). The plaintiff disagrees, arguing that the defendants are misreading the clause.

---

[3]While the Court references the parties' contract, it need not convert this matter to a motion for summary judgment, because the plaintiff has referenced the contract in its amended complaint. (*See, e.g.*, Docket #24,¶ 17); s*ee, e.g., Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*citing Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

> The Court begins with some basics about forum selection clauses.
>
> The existence of a forum selection clause raises a series of potentially litigable questions. First, is the agreement enforceable? Second, if so, does the clause apply to the dispute at hand? Third, if so, is the clause mandatory or merely permissive—that is, does the clause establish the chosen forum as exclusive to others? Fourth, if so, does the clause mandate litigation in a federal or state or foreign court?

14D CHARLES ALAN WRIGHT & ARTHUR D. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3803.1 (4th ed. 2014) (hereinafter "FEDERAL PRACTICE AND PROCEDURE § XXXX.X"). Of those four questions, only the third is actually in dispute in this case: whether the contract's terms actually provides that venue resides in the Superior Court of Cobb County, Georgia, to the exclusion of all other venues.[4]

Because only the *meaning* of the clause is in dispute—not its enforceability—"under the Erie Doctrine, state substantive law governs the interpretation of the agreement." FEDERAL PRACTICE AND PROCEDURE § 3803.1. This begs yet another question: which state's substantive law should the Court apply? The parties have not adequately addressed this issue.[5] It appears that Georgia law should apply, in light of the clause in question (as

---

[4]The parties do not dispute the enforceability of the agreement, the applicability of the clause to this dispute, or the ultimate venue prescribed by the clause.

[5]Interestingly, the defendants seem to primarily cite Georgia substantive law for contract interpretation, despite the fact that it *hurts* their forum-selection argument to read the parties' forum selection clause as prescribing Georgia law as the controlling law. (*See* Docket #33 at 3). The plaintiff, meanwhile, cites everything from Illinois to New Jersey to Wisconsin substantive law (among others, as interpreted by both state and federal courts), but *never* Georgia substantive law, in spite of the fact that it would *help* the plaintiff's argument that the clause in question is not a forum-selection clause but actually a choice-of-law clause. (*See* Docket #29 at 9–19).

the Court will discuss more in a moment), but it is ultimately irrelevant because both Georgia and Wisconsin substantive contract law are the same on the following three important principles:

    (1)    if the language of the contract is unambiguous, then the Court must apply the plain terms of the contract. *See, e.g.*, *Lowry v. Fenzel*, --- S.E.2d ----, 2015 WL 754183 at *2 (Ga. Ct. App. Fed. 24, 2015) (citing *Frier v. Frier*, 692 S.E.2d 667 (Ga. Ct. App. 2010); *Prezosio v. Aerts*, 2014 WI App 126, ¶ 25, 358 Wis. 2d 714, 858 N.W.2d 386 (citing *Konneker v. Romano*, 2010 WI 65, ¶ 26, 326 Wis. 2d 268, 785 N.W.2d 432);

    (2)    if there is any ambiguity in the contract, then the Court must construe any ambiguous terms against the drafter. *See, e.g.*, *DJ Mortgage, LLC v. Synovus Bank*, 750 S.E.2d 797, 805 (Ga. Ct. App. 2013) (citing *Reichman v. Southern Ear, Nose & Throat Surgeons*, 598 S.E.2d 12 (Ga. Ct. App. 2004)); *Marlowe v. IDS Prop. Cas. Ins. Co.*, 2013 WI 29, ¶ 48, 346 Wis. 2d 450, 489, 828 N.W.2d 812, 831 (citing *Hirschhorn v. Auto–Owners Ins. Co.*, 2012 WI 20, ¶ 23, 338 Wis.2d 761, 809 N.W.2d 529); and

    (3)    transfer or dismissal based upon a forum selection is not necessary unless the language of that clause is exclusive rather than permissive. *See, e.g.*, *Laibe Corp. v. Gen. Pump & Well, Inc.*, 733 S.E.2d 332, 337 (Ga. Ct. App. 2012); *Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 25, 296 Wis. 2d 273, 287, 722 N.W.2d 633, 640.

Applying the first of those two principles to the clause in question, the Court is obliged to determine that the clause is permissive, rather than mandatory, and therefore that venue is appropriate in this district.

    To begin, the plain terms of the contract make clear that the clause in question is non-exclusive. The clause uses the word "exclusive" but does so only insofar as it prescribes the *law* that applies to claims arising under the terms of the contract: "The parties agree that the Laws of the State of Georgia have exclusive jurisdiction over any dispute that may arise under, or in connection with, the enforcement of interpretation of this Agreement."

(Docket #9, Ex. 1, ¶ 10). The unambiguous meaning of this phrase is that any disputes will be controlled by Georgia law. Perhaps it is ambiguous,[6] but the Court believes that this ambiguity should be resolved against the defendants, who drafted the clause in question.

To the extent that there is a forum selection clause, the clause is clearly permissive: "Distributor waives any objection based on inconvenience of venue and any objection to venue or forum for such claim or cause of action, and hereby submits to jurisdiction and venue in the Superior Court of Cobb County, Georgia." (Docket #9, Ex. 1, ¶ 10). The phrase does not include any exclusive language. By its plain terms, the clause would require that the plaintiff submit to jurisdiction in the Superior Court of Cobb County, Georgia, *if* brought into Court there. But, there is nothing in the clause that requires the plaintiff to bring its claims only in the Superior Court of Cobb County, Georgia. Various other courts from this Circuit, analyzing the law of other states but asking the same question, have read similar language in this way. *See, e.g.*, *Heckler & Koch, Inc. v. German Sport Guns GmbH*, No. 11-CV-1108, 2014 WL 7366578 at *24 (S.D. Ind. Dec. 24, 2014) (citing *Parker v. Hostetler*, 2008 WL 346007 (N.D. Ind. Feb. 6, 2008); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761–762 (7th Cir. 2006)); *River W. Meeting Associates, Inc. v. Avaya, Inc.*, No. 03-CV-1023, 2003 WL 21026790 at *2 (N.D. Ill. May 6, 2003) (citing *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir.1992); *All–Tech Industries, Inc. v. Freitag Electronic, GmbH*, No. 87-CV-10690, 1988 WL 84719 at *2 (N.D. Ill. Aug. 5, 1988); *Walter*

---

[6]Why does it state that "Laws" should have "jurisdiction," when typically courts are viewed as having jurisdiction? Did the parties intend to say that "the Courts of the State of Georgia have exclusive jurisdiction"? Or, perhaps, did they intend to say that "the Laws of the State of Georgia control any dispute"?

*E. Heller & Co. v. James Godbe Co.*, 601 F. Supp. 319, 320–21 (N.D. Ill. 1984)). And, again, even if the Court were to find that the language is ambiguous, it would resolve that ambiguity against the defendants.

For these reasons, the Court is obliged to conclude that the clause in question is two-parted. Its first part is a choice of law provision, electing Georgia law as controlling. Its second part is a permissive forum selection clause. In light of this interpretation, it would be inappropriate to grant the defendants' motion to dismiss the case in its entirety. The Court will, therefore, deny the defendants' motion to dismiss insofar as it sought dismissal of the entire case pursuant to Rule 12(b)(2) and Rule 12(b)(3) and the terms of the parties contract.[7]

### 2.1.2 Mr. Leuthner's Rule 12(b)(2) Argument in Favor of Dismissal on the Basis of Lack of Personal Jurisdiction

The remaining jurisdictional argument is that Mr. Leuthner is not subject to personal jurisdiction in the State of Wisconsin and, therefore, the Court must dismiss the plaintiff's claims against Mr. Leuthner pursuant to Rule 12(b)(2). That argument prevails.

Because Mr. Leuthner has moved to dismiss the claims against him for lack of personal jurisdiction, the plaintiff must establish that personal jurisdiction exists. *Adv. Tactical Ordnance Systems, LLC v. Real Action Paintball,*

---

[7] The Court acknowledges that the question of *how* the defendants should have phrased this portion of their motion—whether for relief under the doctrine of forum *non-conveniens*, Rule 12(b)(2), Rule 12(b)(3), Rule 12(b)(6), or even 28 U.S.C. §§ 1404 or 1406—is an open (and confusing) question. *See, e.g.*, FEDERAL PRACTICE AND PROCEDURE, § 3803.1 ("When a valid clause mandates suit only in a state or foreign court, transfer is not possible. In that case, how can a federal court enforce the clause? … [T]o say that the court should dismiss begs a further question: what procedural mechanism should it employ?"). However, because the Court has ultimately determined that the forum selection clause is non-exclusive, the Court does not need to address that question.

*Inc.*, 751 F.3d 796, 799–800 (7th Cir. 2014) (citing *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). This is technically a two-part analysis: the Court must determine whether Wisconsin's state courts would have jurisdiction under the state's long-arm statute, Wis. Stat. § 801.05, and whether personal jurisdiction would comport with principles of due process. *See Purdue*, 338 F.3d at 779. But Wisconsin's long-arm statute is liberally construed in favor of conferring jurisdiction to the maximum extent allowable under principles of due process. *See, e.g.*, *Kopke v. A. Hartrodt S.R.L.*, 2001 WL 99, ¶ 10, 245 Wis. 2d 396, 629 N.W.2d 662; *Fabio v. Diversified Consultants, Inc.*, No. 13-CV-524, 2014 WL 713104 at *2 (W.D. Wis. Feb. 25, 2014). So the Court can easily collapse the personal jurisdiction issue into one question: whether personal jurisdiction over Mr. Leuthner comports with principles of due process.

That single question is not easy to answer, though, particularly in light of the Supreme Court's recent refinements of the concept of personal jurisdiction. The Supreme Court has recently explained that personal jurisdiction exists in two distinct forms:

> (1) specific jurisdiction, under which "the in-state activities of the…defendant 'ha[d] not only been continuous and systematic, but also g[a]ve rise to the liabilities sued on.'" *Daimler AG v. Bauman*, --- U.S. ----, 134 S.Ct. 746, 754 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945); citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ----, 131 S.Ct. 2846 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984)); and

(2) general jurisdiction, under which a court can "hear any and all claims against" a defendant when the defendant's "affiliations with the State are so 'continuous and systematic' as to render the [defendant] essentially at home in the forum state." *Goodyear*, 131 S.Ct. at 2851 (quoting *Helicopteros*, 466 U.S. at 414, n. 9).

The plaintiff argues that the Court has both specific and general personal jurisdiction over Mr. Leuthner.[8] (Docket #30 at 6–10).

As to specific jurisdiction, the plaintiff has identified four separate contacts between Mr. Leuthner and Wisconsin:

(1) Mr. Leuthner's physical entry into the state to meet with the plaintiff;

(2) Mr. Leuthner's alleged facilitation of sales to the plaintiff's customers in Wisconsin;

(3) Mr. Leuthner's alleged sale and shipment of products to the plaintiff's competitors; and

(4) Mr. Leuthner's contact with the plaintiff to limit the plaintiff's sales area and credit limit.

(Docket #30 at 7–9). The plaintiff asserts that these "contacts are inseparable from [its] claims and establish jurisdiction."

> In looking to contacts for purposes of specific jurisdiction,
>
> The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not

---

[8] Personal jurisdiction may also exist by virtue of consent if, for example, the defendant was served in the state that the plaintiff has brought suit. *See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro*, --- U.S. ----, 131 S.Ct. 2780, 2787 (2011). But the plaintiff served Mr. Leuthner in Georgia, so that concept is inapplicable in this case.

> suffice to authorize jurisdiction." Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum...." Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement.

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), *as corrected* (May 12, 2014) (quoting *Walden v. Fiore*, --- U.S. ----, 134 S.Ct. 1115 (2014); citing *Int'l Shoe*, 326 U.S. 310; *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Importantly, the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 134 S.Ct. at 1126. Considering each of the purported contacts in light of *Walden*, the Court is left to conclude that it cannot exercise specific jurisdiction over Mr. Leuthner.

First, Mr. Leuthner's prior entries into Wisconsin do not appear to be related to the plaintiff's claims in this case. In light of *Walden*, it is clear that, in assessing specific jurisdiction, the Court must look only to "suit-related" contacts. 134 S.Ct. at 1121–22. The plaintiff's allegations of entry into Wisconsin, though, are frustratingly vague. In its brief, the plaintiff cites to a single paragraph in the declaration of Mike Foord. (Docket #30 at 7 (citing Docket #31, ¶ 18)). But that paragraph does not allege that Mr. Leuthner ever visited Wisconsin; it only establishes the location of the plaintiff's warehouse. (Docket #31, ¶ 18). The closest that the plaintiff can come to alleging Wisconsin visits by Mr. Leuthner comes in the next paragraph of the declaration: "Mr. Leuthner has met with me on numerous occasions in Wisconsin and assured me on numerous occasions that [the plaintiff] could pursue customers outside of [the plaintiff]'s territory." (Docket #31, ¶ 19). But

that statement does not provide a date of occurrence or any indication that, at the time, Mr. Leuthner engaged in any of the "suit-related" conduct.

Second and third, Mr. Leuthner's alleged facilitation of sales to the plaintiff's customers and sale/shipment of products to competitors are both unsubstantiated and not sufficiently related to Wisconsin. The plaintiff's primary support for this contention comes from Paragraphs 11 through 13 of the Foord Declaration. But all three of those paragraphs conclude that "it appears," "it is highly likely," or "I believe," rather than providing any solid evidence. This pleading is no better than making jurisdiction allegations on the basis of information and belief, which is impermissible. *See, e.g., America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992). But, even if the evidence were solid, there is no evidence that Mr. Leuthner directed the activity towards Wisconsin. After *Walden*, it is not enough that Mr. Leuthner's (alleged) activity impacted the plaintiff in Wisconsin, nor is it enough that one of the customers that the plaintiff's competitor allegedly sniped with Mr. Leuthner's help is located in Wisconsin. 134 S.Ct. at 1122, 1126 ("mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction"; Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum….").

Fourth, Mr. Leuthner's having contacted the plaintiff in Wisconsin is not enough to establish specific jurisdiction in Wisconsin in light of *Walden*.

> [T]he plaintiff cannot be the only link between the defendant and the forum. Rather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.

> But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.

*Walden*, 134 S.Ct. at 1122–1123. After making that statement in *Walden*, the Supreme Court described and distinguished its previous decision in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the actual tort of libel "actually occurred *in* California," in light of the publication of libelous information in that state, thus "connect[ing] the defendants' conduct to *California*, not just to a plaintiff who lived there." *Walden*, 134 S.Ct. at 1124 (emphasis in original) (citing *Keeton*, 465 U.S. at 777). "That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." *Walden*, 134 S.Ct. at 1124. By contrast, the defendant in *Walden* did not direct his action at the plaintiffs' home state. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* Mr. Leuthner's contact with the plaintiff in Wisconsin falls much closer to *Walden* than to *Calder*. While Mr. Leuthner communicated to the plaintiff in Wisconsin, that communication did not actually cause any injury or form the basis for the tort in question. It does not connect him to Wisconsin "in a meaningful way." Instead, it (and the fact that the plaintiff suffers its injury in Wisconsin exactly as the *Walden* plaintiffs suffered their injury in the forum state) is the fortuitous outcome of the plaintiff's residence in Wisconsin. This conclusion is also consistent with the Seventh Circuit's pre-*Walden* holding in *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, which found that limited communications with a plaintiff in a forum state could not support personal jurisdiction, because it would not be consistent with "fair play and substantial justice." 18 F.3d 389, 395 (7th Cir. 1994) (citing *Lakeside Bridge & Steel Co. v. Mountain State*

*Construction Co.*, 596 F.2d 596 (7th Cir. 1979); *Capitol Indem. Corp. v. Certain Lloyds Underwriters*, 487 F. Supp. 1115 (W.D. Wis. 1980); *Royal Globe Ins. Co. v. Logicon*, 487 F. Supp. 1245 (N.D. Ill. 1980)).

For these reasons, the Court is obliged to conclude that it cannot exercise specific jurisdiction over Mr. Leuthner.

Nor can it exercise general jurisdiction over him. The bar for exercising general jurisdiction is "high," and "'considerably more stringent' than that required for specific jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir.2012) (quoting *Purdue*, 338 F.3d at 787); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). General jurisdiction is appropriate only when a defendant's contacts are sufficiently "'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear*, 131 S.Ct. at 2851 (citations omitted). "'[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Daimler AG*, 134 S.Ct. at 760 (quoting *Goodyear*, 131 S.Ct. at 2853–54). Perhaps that paradigm is non-exclusive and general jurisdiction can be appropriate in more forums than a person's domicile alone, but that will only be in the exceptional case. *See Daimler AG*, 134 S.Ct. at 761, n.19.

The high bar for general jurisdiction is not met in this case. To begin, Mr. Leuthner is not domiciled in Wisconsin (Docket #5, #6, #9); the plaintiff has admitted as much (Docket #22 at 2). Perhaps that, alone, is enough under *Daimler AG* to render general jurisdiction inapplicable to Mr. Leuthner. Even if not, his contacts with Wisconsin are not so continuous and systematic as to render him at home in Wisconsin. The plaintiff's strongest argument in its favor is that Mr. Leuthner owns a home (Mr. Leuthner calls it an apartment, but that difference seems purely semantic) in Wisconsin and has a car titled in the state. But Mr. Leuthner easily explains that away, pointing out that

both are for the purpose of enabling his wife to more easily visit their son, who lives in Wisconsin. Even assuming that Mr. Leuthner, himself, regularly visited his son and drove his Wisconsin-titled car, the Court still would not conclude that he is subject to general jurisdiction in this state. The plaintiff has not alleged—let alone produced evidence—that Mr. Leuthner spends anything other than a limited amount of time in this state. General jurisdiction is simply not appropriate.

For these reasons, the Court is obliged to dismiss all of the plaintiff's claims against Mr. Leuthner, pursuant to Rule 12(b)(2).

2.2     Claims-Related Arguments

The Court having dismissed the plaintiff's claims against Mr. Leuthner but rejected the defendants' contract-related venue argument, all that remains is the defendants' claim-specific Rule 12(b)(6) arguments.

The Court will deny those motions without prejudice. Unfortunately, neither party has adequately addressed the choice of law issues that animate this case. As the Court discussed above, the plaintiff has argued that the disputed contract language is a choice of law provision; the Court agreed. But what plaintiff did not do is provide the Court with any view about how that choice of law provision should affect the plaintiff's claims in this case. The plaintiff "does not dispute that Georgia law (to the extent it differs from Wisconsin law) governs [the plaintiff]'s claim for breach of the distributorship agreement." (Docket #29 at 10 n.3). But that statement does not address which state's law should apply to the remaining claims. Instead, the plaintiff proceeds to address the defendants' Rule 12(b)(6) arguments by citing only to Wisconsin law. (*See, e.g.*, Docket #29 at 19–28). The defendants, for their part, have also addressed every claim as if Wisconsin law is applicable. (*See, e.g.*, Docket #28 at 8–24; Docket #32 at 5–15).

It may ultimately be true that Wisconsin law applies to every facet of this case, but the Court is hesitant to make that determination and rest Rule 12(b)(6) rulings on such a determination. That is especially true in light of the Court's interpretation of the disputed clause in the parties' contract. That clause indicates that Georgia law applies to at least some portion of this case.

The wiser course in this situation is to deny the defendants' Rule 12(b)(6) motions without prejudice. This will provide the parties an opportunity to consider and discuss the matter of which state's law applies to this case. Thereafter, the parties may file whatever further motions they deem appropriate. Perhaps the plaintiff will wish to amend its complaint to conform its claims to Georgia law; perhaps the defendants will wish to renew their motions to dismiss applying either Georgia or Wisconsin law. Regardless of how the parties wish to proceed, going forward they should ensure that they provide the Court with a clear indication of which state's law applies to the issues that arise.

3.  CONCLUSION

For these reasons, the Court will grant the defendants' motion to dismiss Mr. Leuthner for lack of personal jurisdiction, pursuant to Rule 12(b)(2). (Docket #25). The Court will deny without prejudice the defendants' motion to dismiss the matter in its entirety. (Docket #27). Insofar as the defendants sought dismissal, pursuant to Rule 12(b)(2) or Rule 12(b)(3) (or, for that matter, transfer to another jurisdiction), the Court must deny the motion in light of its interpretation of the disputed clause in the parties' contract. That clause includes both a choice of law provision, as well as a permissive forum selection clause. It does not include an exclusive forum selection clause, so dismissal or transfer would be inappropriate. As to the defendants' request for dismissal pursuant to Rule 12(b)(6), the Court cannot

make a decision on that motion until the parties have more fully briefed the issue of choice of law.

While the defendants may still move to dismiss portions of the plaintiff's complaint, pursuant to Rule 12(b)(6), it nonetheless appears that the remainder of this case will remain in this Court. The Court will, therefore, shortly issue an order setting this matter for a scheduling conference, with the intention of placing this case on a course for swift resolution.

Accordingly,

IT IS ORDERED that the defendants' motion to dismiss Marcel Leuthner for lack of personal jurisdiction (Docket #25) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the defendants' motion to dismiss or transfer this matter in its entirety (Docket #27) be and the same is hereby DENIED without prejudice.

Dated at Milwaukee, Wisconsin, this 17th day of March, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge